[Cite as *State v. Loges*, 2013-Ohio-1582.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

LORI LOGES

     Defendant-Appellant

Appellate Case No.    2012-CA-47

Trial Court Case No.   2011-CR-878

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2013.

. . . . . . . . . . .

LISA FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 E. Columbia St., 4th Floor, P.O. Box 1608, Springfield, Ohio 45501
     Attorney for Plaintiff-Appellee

JESSICA R. MOSS, Atty. Reg. No. 0085437, 2233 Miamisburg-Centerville Rd., Dayton, Ohio 45459
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-Appellant, Lori Loges, appeals from her conviction and sentence on one count of theft of drugs in violation of R.C. 2913.02(A)(1). Following Loges's no-contest plea to the charge, the trial court imposed one year of community control. The court also required Loges to complete treatment at McKinley Hall.

{¶ 2}     Loges contends that the trial court violated her due process rights by denying her motion for intervention in lieu of conviction when she was statutorily eligible. Loges also contends that the trial court abused its discretion by imposing a more stringent condition for intervention in lieu of conviction than the conditions contained in R.C. 2951.041(B).

{¶ 3}     We conclude that the trial court erred in requiring that Loges be drug-dependent as a condition of eligibility under R.C. 2951.041(B)(6). The statute requires only that drug usage be a factor leading to an offender's criminal offense. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

{¶ 4}     In December 2011, Lori Loges was indicted on one count of theft of drugs. The indictment charged Loges with having knowingly obtained control over a dangerous drug on September 9, 2011, in violation of R.C. 2913.02(A)(1). After counsel was appointed, Loges filed a motion for intervention in lieu of conviction (ILC). The trial court held a hearing on the matter, where the defense presented testimony from Loges and from Mischel Depp, a case manager at McKinley Hall.

{¶ 5}     At the time of the alleged crime, Loges was employed as a nurse at Springfield

Community Hospital (SCH). Loges was a licensed registered nurse and had been employed at SCH for approximately eight years. Loges was 43 years old and had no prior criminal record, other than a few minor traffic offenses, like speeding tickets.

{¶ 6} On an unspecified date in September 2011, Loges began using Dilaudid, a narcotic that had not been prescribed, in order to alleviate back pain that she had incurred as a result of her employment. Loges's job involving lifting patients, and she had a recurring issue with her back. Previously, the matter had resolved with rest, but at the time, she was working substantial amounts of overtime and there was no opportunity to rest her back.

{¶ 7} Loges obtained the narcotics by either keeping the waste that she was supposed to throw away, or by withdrawing them under a patient's name. Loges started using Dilaudid once the first day, and twice a day the next time. Loges used the drug the first time because of extreme back pain, and then the drug started drawing her in. After using Dilaudid for approximately three weeks, Loges stopped. This was before Loges had any indication that the hospital knew what she was doing.

{¶ 8} Approximately two weeks later, hospital personnel called Loges in and asked her about the drug issue. They also performed a drug screen, which was negative. The hospital then placed Loges on administrative leave and went through her nursing charts. Loges was subsequently terminated from employment with SCH.

{¶ 9} In addition, the Ohio Nursing Board (ONB) contacted Loges and met with her in November 2011. After talking with the ONB, Loges deactivated her nursing license pending an investigation.

{¶ 10} The ONB told Loges that it would have to conduct an investigation and that she

should obtain a chemical dependency evaluation. ONB also said that Loges's nursing license could be reinstated if she did not have a felony conviction. According to ONB, there is an alternative program for chemical dependency. The first step is to obtain a professional evaluation to find out if the nurse is addicted. The nurse must follow the recommendations, and if he or she does that and is accepted into the alternative chemical dependency program, the nurse would be placed under ONB's supervision for two years with narcotics restrictions, meaning that the nurse could administer drugs other than narcotics. In addition, the nurse would also be subject to random drug screens at any time. If the nurse were in compliance for two years, the restrictions would be released and the nurse would then be allowed to act as a registered nurse in a full capacity.

{¶ 11}  Loges fully cooperated with the ONB investigation. She immediately called McKinley Hall to schedule an assessment, but was not able to get in until December 2, 2011. The day after she met with ONB, Loges also met with Detective Collins, and fully cooperated, including signing a waiver of her rights. Collins told Loges that she would probably be charged with theft of drugs.

{¶ 12}  Loges was indicted on one count of theft of drugs on December 19, 2011. Previously, on December 2, 2011, Loges had been assessed at McKinley Hall and was deemed to be chemically dependent. As a result of the assessment, Vanessa Crow-Porter, a licensed chemical dependency counselor, recommended that Loges undergo intensive outpatient treatment, which included chemical dependency education, relapse prevention, individual and group sessions, and attendance at three NA or AA meetings a week. On December 5, 2011, Loges began treatment at McKinley Hall three days a week, for three hours each day. Loges was

also subject to random drug and alcohol screens when she came to treatment, and always tested negative.

{¶ 13}     Loges's case manager, Mischel Depp, testified that he had frequent contact with Loges and kept notes regarding her progress and treatment.  According to Depp, Loges was participating in NA and AA, and also participated in groups as required.  She actively participated and engaged with the group.  Depp indicated that Loges was doing well at the time of the hearing and had recently been moved from intensive outpatient treatment to outpatient treatment, which reduced her days of attendance.

{¶ 14}     Depp testified that Loges's drug usage was a factor leading to her criminal conduct or her criminal charge, because she is opiate dependent.  Depp expressed the belief that if Loges completed her treatment program at McKinley Hall, her chances of engaging in future drug-related conduct would be reduced.

{¶ 15}     Loges also testified that her use of Dilaudid was a factor leading to her criminal conduct and her criminal charge.  Loges indicated that as a result of treatment, she had a great understanding of how her problem happened, and that the relapse intervention had been very helpful.  Loges also said that even though she was not using drugs when she sought treatment, she recognized that part of addiction is that even if drugs are not being used, the mind still needs to be healed. Thus, she had a problem that she needed to fix.

{¶ 16}     During closing argument, the State said that: "Your honor, in reviewing the file and hearing today's hearing, it's the State's position that the defendant has met all the qualifications for intervention in lieu of conviction, and the State would support the defendant's motion."   April 13, 2012 Transcript of ILC Proceedings, p. 32.

{¶ 17}    After hearing the above testimony, which was undisputed, and the closing arguments of the parties, the trial court commented on the fact that Loges was not dependent on Dilaudid on the very first occasion that she took the drug.   The court then asked the following question: "And the parties are both in agreement that given that circumstance that she meets all the eligibility requirements for treatment in lieu of conviction?"   *Id.* at pp. 34-35.   Both the State and defense answered "yes" to this question.   *Id.* at p. 35.

{¶ 18}    The trial court then expressed confusion about how Loges's drug use would be a factor under R.C. 2951.041(B)(6), i.e., a factor leading to the criminal offense, when Loges was not dependent on Dilaudid at the time of the first theft.   In response, the defense stressed that the statute does not place a time limit on when usage is supposed to be a factor.   The defense added that although Loges stole the drug when she was not addicted, her testimony was that the drugs took hold of her during the time when she became addicted and continued to steal.   The State agreed with the defense.   The State noted that more than one incident had occurred, but the State had elected to charge on only one count for one date in September, which was intended to be representative of the entire course of conduct.   The State again agreed with the defense that Loges's conduct after the initial incident would meet that particular prong of the ILC statute. *Id.* at p. 37.

{¶ 19}    At the conclusion of the hearing, the trial court gave the attorneys two weeks to research the point the court had mentioned.   The trial court also said that if the attorneys could not find cases on point, they could articulate their positions in writing.   Loges filed a response, but the State apparently elected not to do so.

{¶ 20}    On April 27, 2012, the trial court overruled the motion for ILC in a very brief

entry.　The court did not discuss its reasons, but simply overruled the motion.　Loges subsequently pled no contest to the single count of theft of drugs and was sentenced to one year of community control.　Loges now appeals from her conviction and sentence.

## II.　Did the Trial Court Err in Considering the Motion for ILC?

{¶ 21}　The First and Second Assignments of Error are interrelated and will be discussed together.　Loges's First Assignment of Error is as follows:

> The trial court violated Appellant's due process rights by denying her motion for intervention in lieu of conviction despite the fact that she was statutorily eligible.

{¶ 22}　Loges's Second Assignment of Error states that:

{¶ 23}　The trial court abused its discretion in overruling Defendant's motion for intervention in lieu of conviction by requiring that Defendant satisfy a more stringent condition than those contained in R.C. 2951.041.

{¶ 24}　Under these assignments of error, Loges contends that the trial court erred in denying her ILC motion when she was statutorily eligible.　In particular, Loges argues that the trial court inappropriately created its own criteria for deciding if Loges were eligible for ILC.

{¶ 25}　ILC is governed by R.C. 2951.041.　" 'In enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime.' " *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, ¶ 10, quoting *State v. Shoaf*, 140 Ohio

App.3d 75, 77, 746 N.E.2d 674 (10th Dist.2000). "R.C. 2951.041 is not limited to offenders charged with drug offenses. Rather, any offender charged with any qualifying offense may be eligible for ILC so long as the trial court has 'reason to believe that drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior.' R.C. 2951.041(A)(1). ILC is not designed as punishment, but rather as an opportunity for first-time offenders to receive help for their dependence without the ramifications of a felony conviction." *Id.*, citing *State v. Ingram*, 8th Dist. Cuyahoga No. 84925, 2005-Ohio-1967, ¶ 13.

{¶ 26} At the time of Loges's application for ILC, R.C. 2951.041(B) stated that a defendant would be eligible for intervention in lieu of conviction if the court found a list of ten factors to be present. There is no dispute about the presence of nine of these factors – the only issue concerns the existence of R.C. 2951.041(B)(6), which states that:

> The offender's drug usage, alcohol usage, mental illness, or intellectual disability, whichever is applicable, was a factor leading to the criminal offense with which the offender is charged, intervention in lieu of conviction would not demean the seriousness of the offense, and intervention would substantially reduce the likelihood of any future criminal activity.

{¶ 27} We have previously held that " '[e]ligibility determinations are matters of law subject to *de novo* review.' " (Emphasis added.) *State v. Smith*, 2d Dist. Montgomery No. 24812, 2012-Ohio-3395, ¶ 7, quoting *State v. Baker*, 2d Dist. Montgomery No. 24510, 2012-Ohio-729, ¶ 8. Furthermore, " '[i]f an offender satisfies all of the statutory eligibility requirements for intervention, the trial court has discretion to determine whether a particular offender is a good candidate for intervention.' " *Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864,

926 N.E.2d 1282, at ¶ 11, quoting *State v. Geraci*, 10th Dist. Franklin No. 04AP-26, 2004-Ohio-6128, ¶ 5.

**{¶ 28}** In the case before us, the trial court's entry did not state the reasons for rejecting ILC. However, the court's sole focus in the hearing was on whether Loges met the statutory criteria in the first part of R.C. 2951.141(B)(6), which requires that "the offender's drug usage * * * was a factor leading to the criminal offense with which the offender is charged." Because this issue involves an eligibility determination and not whether Loges is a good candidate for ILC, we review the matter *de novo*.

**{¶ 29}** As was noted, the trial court expressed concern over the fact that Loges was not drug-dependent at the time she first stole Dilaudid. However, the statute does not require that a defendant be drug-dependent. In *State v. Fullenkamp*, 2d Dist. Darke No. 2001 CA 1543, 2001 WL 1295372 (Oct. 26, 2001), we concluded that the legislature did not intend a defendant's "drug or alcohol dependency or the danger of becoming dependent to remain the predicate condition for eligibility." *Id*. at *2. We noted that an earlier version of the statute indicated that a court should accept a request for treatment in lieu of conviction if the court has reason to believe that the offender "is a drug dependent person or is in danger of becoming a drug dependent person * * *." *Id.*, quoting from former R.C. 2951.041(A). However, under the current version of the statute (which is still the same today in pertinent part as it was when *Fullenkamp* was decided), a court may accept an offender's request for intervention in lieu of conviction if "the court has reason to believe that *drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior * * *.*" (Emphasis sic.) *Id.*, quoting from R.C. 2951.141(A)(1).

**{¶ 30}** In *Fullenkamp*, the trial court rejected a request for ILC because it did not believe that the defendant's alcohol problem was so grave that his future conduct would be linked to alcohol or drug abuse problems. The defendant also did not have a history of "chronic alcohol or drug dependency." *Id.* at \*1. Instead, the criminal charges appeared to be linked to an incident of " 'binge' " drinking. *Id.*

**{¶ 31}** We concluded that the trial court had "impermissibly engrafted a more stringent predicate condition for eligibility," and that "the trial court acted arbitrarily and contrary to the legislative intent expressed in R.C. 2951.041(A)(1) when it denied intervention solely because Fullenkamp's alcohol problem was not serious enough. All that the statute requires is that drug or alcohol usage be a factor leading to the offender's criminal behavior, of which there is no doubt in this case." *Id.*

**{¶ 32}** With regard to the criminal offense, the State selected the date for the single count of drug theft as "representative of the entire course of conduct." April 13, 2012 Transcript of ILC Proceedings, p. 37. And, as the defense pointed out, although Loges had not previously used Dilaudid before she initially stole it, she became addicted during the course of the criminal conduct. The testimony from the drug counselor, which was undisputed, also was that Loges was opiate dependent. Thus, drug usage was a factor in the behavior leading to the criminal offense with which Loges was charged, as required by R.C. 2951.041(B)(6). The trial court imposed an impermissible condition by requiring that Loges be drug-dependent when she first took Dilaudid.

**{¶ 33}** We should stress that we have made no determination regarding whether Loges is a good candidate for ILC. Although the trial court's sole concern at the hearing appears to

have been eligibility under R.C. 2951.041(B)(6), the court failed to make any findings with regard to Loges's candidacy. Therefore, we can make no assumptions about this point, which is committed to the discretion of the trial court. *Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, at ¶ 11. Accordingly, the judgment will be reversed, and this matter will be remanded to the trial court for further proceedings.

{¶ 34} Loges's First and Second Assignments of Error are sustained.


III. Conclusion

{¶ 35} All of Loges's assignments of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded to the trial court for further proceedings.


. . . . . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.



Copies mailed to:

Lisa Fannin
Jessica R. Moss
Hon. Douglas M. Rastatter